UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CAZIONN WILLIAMS,

                Plaintiff,

v.                                             Case No. 23-cv-711-pp

WILLIAM SWIEKATOWSKI, TIFFANY RUNCIMAN,
HILLARY BERG and AMY WOLFF,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Cazionn Williams, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants were deliberately indifferent to his risk of self-harm and failed to provide him timely medical treatment. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On June 14, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $3.93. Dkt. No. 6. The court received that fee on July 11, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.  Screening the Complaint**

    A.  Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names as defendants Restrictive Housing Unit (RHU) Captain William Swiekatowski, RHU Sergeant Tiffany Runciman and Psychiatric Services Unit doctors Hillary J. Berg and Amy Wolff. Dkt. No. 1 at ¶¶5–8. The complaint alleges that all the defendants work at Green Bay Correctional Institution, where the plaintiff previously was confined. Id. at ¶¶4–8.

The plaintiff alleges that on April 27, 2022, he was in the RHU and saw Sergeant Runciman speaking with another incarcerated person. Id. at ¶9. He called to Runciman and told her that he had a razorblade that he was going to swallow; he told her he was suicidal. Id. at ¶10. After the plaintiff showed her the razorblade, Runciman said, "Please don[']t" and asked if she could have it. Id. at ¶11. The plaintiff instead placed the razorblade in his mouth and swallowed it. Id. at ¶12. He then opened his mouth to show Runciman that he had swallowed it. Id. Runciman allegedly walked away from the plaintiff's cell and did not return for an hour. Id. at ¶13. She then had staff take the plaintiff to the Health Services Unit to see a nurse (who is not a defendant). Id. The nurse took the plaintiff's vital signs and told him that if he started coughing up blood, he should inform "them"; the nurse said she had called the provider, who said that the plaintiff should increase his water intake and drink Miralax to try to pass the razorblade. Id. at ¶14. She allegedly said that the provide said that "otherwise there wasn't anything else they [could] do." Id. The plaintiff alleges that the nurse told him that he wouldn't be getting "any outside treatment or examinations;" he was escorted back to his cell, despite the fact that he says he still was feeling suicidal. Id. at ¶15.

As staff was returning the plaintiff to his cell, he saw Captain Swiekatowski, told him that the plaintiff was suicidal and threatened "to swallow another razorblade as soon as [he] g[o]t back in [his] cell." Id. at ¶16. Swiekatowski followed the plaintiff to his cell to talk with him, but the plaintiff

4

swallowed a second razorblade in front of him. Id. at ¶17. He says Swiekatowski "simply walked away from [the] cell door." Id.

Dr. Berg came by the plaintiff's cell and asked if the plaintiff was feeling suicidal. Id. at ¶18. The plaintiff says he "admitted that [he] wasn't feeling like [he] wanted to kill [him]self but [he] was feeling like [he] wanted to self-harm." Id. Berg then left his cell. Id. at ¶19. Dr. Wolff came to the plaintiff's cell between 4:45 and 5:00 p.m. and asked if the plaintiff wanted to be seen outside of his cell because of his history of mental health issues. Id. at ¶20. The plaintiff said that he did; he was removed from his cell and placed in a hearing room. Id. at ¶21. Drs. Berg and Wolff came to the cell to speak with the plaintiff and told him they were going to have him moved to observation status. Id. The plaintiff asked why he was not put on observation status earlier when he swallowed the razorblades. Id. The doctors allegedly responded "that their boss Dr. Todd Hamilton [who is not a defendant] insisted that [the plaintiff] be immediately placed on observation status." Id. Dr. Wolff allegedly told the plaintiff that he was being placed on observation status "just to save their asses." Id. at ¶22. The plaintiff says he "became agitated, produced a third razor blade and swallowed it." Id. at ¶23. He says Drs. Wolff and Berg and Captain Swiekatowski watched him swallow the third razorblade. Id. He says he "ended up spitting and coughing up blood while sitting on the floor of the hearing room." Id. The plaintiff says that despite his having swallowed three razorblades and coughing and spitting up blood, he was never seen by the Health Services Unit staff; he says he submitted several health services

5

requests about the incident but that HSU did not see him and that there were no x-rays, no MRIs, "no nothing." Id. at ¶24.

The plaintiff sues the defendants in their official and individual capacities. Id. at ¶¶5–8. He seeks declaratory relief that the defendants failed to protect him from self-harm and provide him medical treatment in violation of his rights under the Eighth Amendment; injunctive relief ordering the defendants "to adequately treat inmates who suffer from serious mental health issues and to transfer them to Wisconsin Resource Center or Mendota"; and compensatory and punitive damages. Id. at 4.

C. Analysis

1. *Individual Capacity Claims*

The court analyzes the plaintiff's allegations of deliberate indifference under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, an incarcerated person must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The risk of harm may come from the incarcerated person's act or threat of self-harm "up to and including suicide." Miranda v. County of Lake, 900 F.3d 335, 349 (7th Cir. 2018). The subjective component requires the incarcerated person to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. The plaintiff

6
Case 2:23-cv-00711-PP   Filed 08/07/23   Page 6 of 15   Document 17

must show the prison official's "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." Ayoubi v. Dart, 724 F. App'x 470, 474 (7th Cir. 2018) (citing Farmer, 511 U.S. at 837, 844–45).

The plaintiff has not stated a deliberate indifference claim against any defendant. He says that on three separate occasions, he produced and swallowed a razorblade in front of one or more defendants. But he does not allege that any defendant acknowledged *and disregarded* the risk that the plaintiff could pose to himself with the razorblade. When he told Runciman that he had a razorblade that he was going to swallow, Runciman asked him not to and to give her the razorblade. The plaintiff says he instead immediately swallowed the razorblade. He similarly alleges that while he was talking to Swiekatowski about feeling suicidal, he produced and swallowed another razorblade without warning and without telling Swiekatowski that he had it. Defendants Berg and Wolff removed the plaintiff from his cell and took him to a hearing room before placing him on observation status to protect him from himself. But while he was in the hearing room, he again produced and swallowed a razorblade without suggesting to the doctors that he had the razorblade and would swallow it.

The plaintiff does not allege that the defendants disregarded the risk of harm that the plaintiff posed to himself. He alleges instead that one of them (Runciman) tried to talk the plaintiff out of swallowing the blade, that one of them (Runciman) tried to get the blade from him, and that one of them (Wolff) had him removed from his cell to speak to him about his desire to harm

himself and that two of them (Wolff and Berg) placed him on observation status to protect him. The only defendant whom the plaintiff says he told about the razorblade before swallowing it is Runciman, who attempted to get the plaintiff to stop and hand it over. In the second and third instances, the plaintiff suggests that he spontaneously produced and swallowed the razorblade without any warning or suggestion that he had it. The defendants cannot be held liable "if they responded reasonably to the risk, even [though] the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent." Peate v. McCann, 294 F.3d 879, 882 (7th Cir. 2002); see Barrows v. Goldman, 858 F. App'x 199, 201 (7th Cir. 2021) (citing Farmer, 511 U.S. at 843; and Johnson v. Dominguez, 5 F.4th 818, 824–25 (7th Cir. 2021)). The complaint alleges that that is what happened.

Runciman took reasonable steps to stop the plaintiff from harming himself by swallowing the razorblade but he did it anyway. The other defendants had no warning that he was about to swallow a razorblade; they did not become aware of the risk until the plaintiff either was swallowing the blade or already had done so. And once the plaintiff had swallowed the first two blades, the defendants took steps to protect him—they removed him from the cell, took him to an interview room and then placed him on observation. While the plaintiff alleges that one of the doctors told him they were doing this only to protect themselves—and while such a comment would be unprofessional—it does not change the fact that they took action to try to protect the defendant

8
Case 2:23-cv-00711-PP   Filed 08/07/23   Page 8 of 15   Document 17

from doing himself further harm. The complaint does not state a claim that the defendants were aware of yet disregarded the plaintiff's risk of self-harm.

The plaintiff also seeks to proceed on a claim that the defendants failed to provide him timely medical assistance after he swallowed the razorblades. This claim also arises under the Eighth Amendment. See Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019). To proceed on this claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). "[T]he Constitution does not mandate immediate care." Moore v. Williams, 835 F. App'x 143, 145 (7th Cir. 2021) (citing Knight v. Wiseman, 590 F.3d 458, 466 (7th Cir. 2009). But the plaintiff may state an Eighth Amendment claim if he can show that the defendants inexplicably delayed providing necessary medical treatment. Petties, 836 F.3d at 730 (citing Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008)).

The plaintiff alleges that after he swallowed the first razorblade, Runciman left his cell and did not return for an hour, at which time she took the plaintiff to the medical unit. He did not receive medical intervention in the meantime. He alleges that Swiekatowski similarly walked away from the plaintiff's cell after the plaintiff had swallowed the second razorblade and did not call for medical assistance. The plaintiff did not see a nurse after this second incident. The plaintiff says that after swallowing the third razorblade, he remained in the hearing room and eventually began spitting or coughing up

9
Case 2:23-cv-00711-PP   Filed 08/07/23   Page 9 of 15   Document 17

blood. He says the defendants never took him for additional medical treatment. At the screening stage, where the court must accept the plaintiff's allegations as true, these allegations are sufficient to suggest that the defendants were aware of a serious medical issue (that the plaintiff had swallowed a razorblade) and declined to seek immediate medical treatment. The court will allow the plaintiff to proceed on this claim against all the defendants.

2.  *Available Remedy*

The plaintiff seeks declaratory and injunctive relief and damages against each defendant. But the plaintiff is no longer incarcerated at Green Bay, where he alleges these events occurred, and he does not allege that he expects to return there. Because the plaintiff has been transferred, "a declaratory judgment would not affect [the defendants'] behavior towards [the plaintiff]." Pearson v. Welborn, 471 F.3d 732, 743 (7th Cir. 2006) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 103–04 (1983)). That means the plaintiff's request for declaratory relief is moot. See Bigbee v. Nalley, 482 F. Supp. 2d 1092, 1099 (W.D. Wis. 2007) (citing Robinson v. City of Chi., 868 F.2d 959, 966 n.5 (7th Cir. 1989); and Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1996)). Even if his request were not moot, declaratory relief under §1983 "is only proper if there is a continuing violation of federal law." Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)). Because the plaintiff is no longer subject to the allegedly unlawful treatment he received from the defendants at Green Bay, there is no

ongoing violation of his rights that declaratory judgment could cure. The court will not allow him to proceed on his request for declaratory judgment.

The plaintiff also seeks an injunction ordering the defendants generally to treat mentally ill prisoners and transfer them to different institutions. Again, the plaintiff's request for injunctive relief is moot because he is no longer incarcerated at Green Bay. See Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011) (concluding that prayer for injunctive relief was moot because plaintiff was transferred to a different facility and failed to allege "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains"). Even if that request were not moot, the plaintiff would not be entitled to the relief because he seeks injunctive relief for *other* incarcerated persons. The plaintiff cannot assert the rights of any other incarcerated person or demand relief on their behalf. See Lewis v. Casey, 518 U.S. 343, 349–50 (1996); Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999). The court also has no authority to order that *any* incarcerated person be transferred to a different institution. See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012) (explaining that "prison officials have broad administrative and discretionary authority over the institutions they manage," which includes the housing of prisoners). The plaintiff's request for a transfer to another prison "is highly intrusive to the inner workings of the prison system and would tread upon the DOC's authority over running their institution." Capoeira v. Pollard, No. 16-CV-224-LA, 2016 WL 1452398, at *4

11
Case 2:23-cv-00711-PP   Filed 08/07/23   Page 11 of 15   Document 17

(E.D. Wis. Apr. 13, 2016). The plaintiff may proceed only on his request for damages.

### 3. *Official Capacity Claims*

The plaintiff seeks to proceed on his Eighth Amendment claim against the defendants in their official capacities. Claims against an official in his or her official capacity represent another way to plead an action against the entity that he or she represents or for which the official works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The court construes the claims against the defendants in their official capacities as having been brought against the Wisconsin Department of Corrections (DOC), the agency for which they work. Id. at 165–66. Because claims against the DOC are "no different from a suit against the State itself," the court construes these claims as having been brought against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. That means the plaintiff may not proceed against the defendants in their official capacities to recover damages. See Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002) (citing Will, 491 U.S. at 66); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003).

Because the only relief available to the plaintiff in this lawsuit is damages, he may not proceed against the defendants in their official capacities.

The court will dismiss the plaintiff's official-capacity claims. He may proceed against each defendant in his or her individual capacity only and only on the plaintiff's request for damages.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants William Swiekatowski, Tiffany Runciman, Hillary J. Berg and Amy Wolff. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$346.07** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 7th day of August, 2023.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**